UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNREE MOULTRIE III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-04083-SLD-JEH |
| | ) |
| KELLY CHEESMAN, JAMIE CARR, | ) |
| JEREMY KARLIN, JULIE DONNELLY, | ) |
| CATHERINE JOHNSON, and SABRINA | ) |
| STOOPS, | ) |
| | ) |
| Defendants. | ) |

MERIT REVIEW ORDER

The Court dismissed *pro se* Plaintiff Unree Moultrie III's complaint, ECF No. 1, for failure to state a claim, July 27, 2020 Merit Review Order 4, ECF No. 4, but granted him leave to file an amended complaint, Mar. 23, 2021 Order 2, ECF No. 10. He then filed an Amended Complaint against Defendants Kelly Cheesman, Jamie Carr, Jeremy Karlin, Julie Donnelly, Catherine Johnson, and Sabrina Stoops alleging constitutional violations arising out of a Knox County, Illinois child support case that was filed in 1993 and events that occurred regarding that case in 2019 and 2020. *See* Am. Compl. 1–6, 9, ECF No. 18.[1] The matter comes before the Court for merit review of the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and on Plaintiff's motion to proceed *in forma pauperis* ("IFP"), ECF No. 19, motion to request counsel, ECF No. 20, motion to withdraw the motion to request counsel, ECF No. 21, and motions for status, ECF Nos. 22 & 24. For the reasons that follow, the motion to proceed IFP and motions

---

[1] The Court uses the page numbers generated by CM/ECF because the Amended Complaint is inconsistently paginated.

for status are MOOT, the motion to request counsel is WITHDRAWN, the motion to withdraw is GRANTED, and the case is DISMISSED.

## BACKGROUND[2]

Plaintiff's filings are difficult to follow. From the complaint and Amended Complaint, along with the exhibits attached to the complaint, however, the Court gathers the following. In 1993, a parentage case was instituted in Knox County against Plaintiff. Plaintiff alleges that Knox County Deputy Clerk Jamie Carr and others "conspired to have the case filed on Oct[ober] 13, 1993 and heard and ruled upon on Oct[ober] 13, 1993." Am. Compl. 2. Plaintiff appears to be alleging that Carr and the Knox County State's Attorney's office conspired to have the case decided in one day such that he could not have contested the judgment of parentage and the child support award entered against him. *See id.* at 9 ("After working with others on Oct[ober] 13, 1993 the Knox County State[']s Attorney[']s unethical tactics to force it[]s objective upon me . . . .").

Years later, Plaintiff went to the Knox County Clerk's office and asked Carr if he could buy a docket sheet for the 1993 case. *Id.* at 2, 9. He was told a docket sheet did not exist. *Id.* He filed many *pro se* motions seeking relief from the case. *Id.* at 9. Carr refused to file one of those motions. *Id.* at 2, 9. Plaintiff approached Carr's boss, Knox County Clerk Kelly Cheesman, to complain that Carr told him there was no docket sheet and refused to file his

---

[2] The Federal Rule of Civil Procedure 12(b)(6) standard applies when determining if a complaint fails to state a claim under § 1915(e)(2)(B)(ii). *Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017). Thus, the court must take all well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). In determining whether a complaint states a claim, the court may also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Plaintiff's Amended Complaint concerns a parentage and child support case instituted against him, and documentation from that case is attached as exhibits to the complaint, *see* Compl. Exs. 1–25, ECF No. 1 at 19–43. The Court considers the Amended Complaint and those exhibits to determine whether Plaintiff states a claim for relief.

motion. *Id.* Cheesman "had [his] motion filed but did not provide [him] with a docket sheet nor did [she] remove" Carr "from handling [Plaintiff's] case further." *Id.* at 9. Sometime before his appeal had to be filed, Carr provided Plaintiff with an allegedly altered docket sheet. *Id.* at 2, 9; *see* Docket Sheet, Compl. Ex. 8, ECF No. 1 at 26. Plaintiff did file an appeal in the 1993 case, but it was eventually dismissed. *See* Am. Compl. 9. Plaintiff learned that the docket sheet had been altered because he later received "a true and correct docket sheet." *Id.* at 2. He appears to be talking about a case history report provided to him on February 11, 2020. *See* Case History Report, Compl. Ex. 13-25, ECF No. 1 at 31–43; Compl. 17[3] (alleging that "[w]hen [he] compared the docket sheet that [he] got [on February 11, 2020, referring to the case history report,] to the one [he] got from Jamie Carr they were completely different").

Plaintiff alleges that receiving the allegedly altered docket sheet "[a]ffected [his] rights to file pro se motions effectively and . . . was one of the reasons [his] case was dismissed on appeal." Am. Compl. 9. He alleges that Carr, the Knox County State's Attorney's office, and the court reporter's office conspired to "tamper with the record" to cover up the wrongdoing Carr and the Knox County State's Attorney's office committed in 1993 and that because the record was tampered with, he "could not show on appeal that the lower court knew when the matter was filed and heard." *Id.* He asserts unspecified Fourth, Fifth, Sixth, Seventh, Eighth, Thirteenth, and Fourteenth Amendment claims against Defendants under 42 U.S.C. § 1983. *See id.* at 1.

## DISCUSSION

I.   **Plaintiff's Motions**

Plaintiff was granted IFP status on July 27, 2020. July 27, 2020 Merit Review Order 1. Thus, his pending motion to proceed IFP is moot. Plaintiff also filed a motion to request

---

[3] The Court uses the CM/ECF-generated page numbers because the complaint is inconsistently paginated.

counsel, which he then moved to withdraw.  The motion to withdraw is granted, so the motion to request counsel is withdrawn.  The motions for status are moot in light of this Order dismissing the case.

**II.     Merit Review**

### A.  Legal Standard

A court must dismiss a complaint brought by an individual proceeding IFP if the individual "seeks monetary relief against a defendant who is immune from such relief," 28 U.S.C. § 1915(e)(2)(B)(iii), or if the court determines the complaint "fails to state a claim on which relief may be granted," *id.* § 1915(e)(2)(B)(ii).  The Federal Rule of Civil Procedure 12(b)(6) standard applies when determining if a complaint fails to state a claim under § 1915(e)(2)(B)(ii).  *Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017).  Thus, the court takes all well-pleaded allegations as true and views them in the light most favorable to the plaintiff.  *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).  The court liberally construes *pro se* complaints, *id.*, but conclusory statements and labels are insufficient, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The factual allegations must "state a claim to relief that is plausible on its face."  *Id.* at 570.

### B.  Analysis

#### i.  Defendant Jamie Carr

The claims against Carr are dismissed for failure to state a claim.  It appears that Plaintiff is challenging two sets of Carr's actions in the Amended Complaint: her actions in 1993 to allegedly have the child support case filed and ruled upon on the same day so that he could not participate in the case and her actions in 2019 or 2020 that were allegedly intended to cover up

the 1993 actions. It is not clear how he believes this violates the Constitution, but regardless, he fails to plausibly allege that Carr committed any constitutional violations.

Even if a claim regarding the 1993 allegations is not time-barred,[4] it is belied by the records Plaintiff attached to his complaint. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) ("[W]here an exhibit [attached to a complaint] conflicts with the allegations of the complaint, the exhibit typically controls."). The records show that the case was filed prior to October 13, 1993. Plaintiff provided a summons and return that were filed in the 1993 case. *See* Second Alias Summons, Compl. Ex. 1, ECF No. 1 at 19; Sheriff's Report, Compl. Ex. 2, ECF No. 1 at 20. The summons was filed in the Knox County Circuit Court on October 13, 1993. *See* Second Alias Summons. But it was served on Plaintiff on October 8, 1993, *see* Sheriff's Report, and signed by the Clerk of Court in September 1993, *see* Second Alias Summons. That the summons was issued prior to October 13, 1993 demonstrates that the case was in existence prior to October 13, 1993. Indeed, both the docket sheet Plaintiff received from Carr and the case history report he later received show that the petition to determine the existence of the father-child relationship was filed in June 1993. *See* Docket Sheet; Case History Report 1. Moreover, though the summons indicates that a hearing was scheduled for October 13, 1993, *see* Second Alias Summons, both the docket sheet and the case history report indicate that the October 13, 1993 hearing was continued, and that the judgment of parentage was not filed until December 1, 1993. *See* Docket Sheet; Case History Report 2–3. Thus, Plaintiff cannot

---

[4] "Claims brought under § 1983 are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). "In Illinois the statute of limitations for personal-injury actions is two years from when the cause of action accrued . . . ." *Id.* (citing 735 ILCS 5/13-202). Because it is unclear what type of claim Plaintiff is asserting, it is hard to analyze when the claim accrued.

state a claim that he was unable to participate in the 1993 child support case because it was filed and heard on the same date.

As to the claim based on the 2019 or 2020 events, Plaintiff admits that all of his motions were filed, and that he did receive a docket sheet despite Carr initially telling him one did not exist. Am. Compl. 9; July 27, 2020 Merit Review Order 2–3 (holding that Plaintiff failed to state a claim that Carr violated his right to access the courts because he admitted that all of his documents were filed and he obtained copies of every document he requested). And though he claims that the docket sheet had been tampered with to cover up wrongdoing, he fails to allege the nature of the tampering. Moreover, as explained above, the records bely his claim of wrongdoing. Indeed, the two documents he refers to as docket sheets contain the same information with respect to filing of the case, service on Plaintiff, and the judgment of parentage. *Compare* Docket Sheet, *with* Case History Report 1–3. The case history report and the docket sheet are clearly different documents—the case history report contains far more detail, and the docket sheet only summarizes documents filed in the case—but that does not plausibly suggest anyone tampered with the record.

In sum, Plaintiff fails to plausibly allege a constitutional violation by Carr.

### ii.  Defendant Kelly Cheesman

The claims against Cheesman are also dismissed for failure to state a claim. Plaintiff alleges that Cheesman did not provide him with a docket sheet, and that after he reported Carr's misdeeds to Cheesman, Cheesman did not remove Carr from his case. Am. Compl. 2. Again, Plaintiff admits that he did receive a docket sheet, so it is not clear how he was injured by Cheesman's failure to provide him with a docket sheet. And as it relates to Cheesman's failure to remove Carr from the case, because Plaintiff fails to state a claim that Carr violated his

constitutional rights, he also fails to state a claim that Cheesman violated his constitutional rights. A supervisor is only liable under section 1983 when she is "personally involved in [a] constitutional violation," such as when she "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye for fear of what [she] might see." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 403 (7th Cir. 2018) (quotation marks omitted). Because Plaintiff fails to plausibly allege that Carr committed a constitutional violation, there was no constitutional violation for Cheesman to condone or facilitate. *See Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (finding no supervisor liability when a police officer did not commit an unconstitutional arrest because he had probable cause, explaining that "there was no constitutional violation for [the supervisor] to condone").

### iii. Defendants Jeremy Karlin and Julie Donnelly

The claims against Karlin, the State's Attorney for Knox County, and Donnelly, the head court reporter for Knox County, *see* Am. Compl. 3–4, are also dismissed for failure to state a claim. Plaintiff does not allege that Karlin and Donnelly were personally involved in causing his injury but rather that the policy or custom of their agencies violated his rights. *See id*. However, he includes no allegations regarding any policies or customs of the State's Attorney's office or the court reporter's office. He states that he believes the Court has "the record," *id.*, which the Court takes to mean the record of the 1993 case. Nothing in that record suggests that Plaintiff was injured because of a policy or custom of the State's Attorney's office or the court reporter's office.

### iv. Defendant Catherine Johnson

Any claim against Johnson, the second in command of the Knox County court reporter's office, Am. Compl. 5, is also dismissed for failure to state a claim. Plaintiff merely alleges that

7

Johnson "conspired with others and/or made a major mistake in preparing the record for appeal." *Id.* No further details are provided regarding actions Johnson took or the alleged mistake in the record, so the Court cannot find it plausible that Johnson could be liable for any alleged constitutional violation.

### v. Defendant Sabrina Stoops

Plaintiff's claims against Stoops, an assistant state's attorney, *see* Am. Compl. 6, are dismissed because she is entitled to absolute immunity. Plaintiff alleges that Stoops "had [him] ordered to the Knox County Court house [sic] where she and [his] son's mother amb[]ushed [him] telling [him] that if [he] did not sign documents . . . agreeing to pay a certain [amount] of child support that she would take [him] into court and have [him] pay way more." *Id.*

An assistant state's attorney sued in her individual capacity[5] may be entitled to absolute immunity depending upon the function she was performing at the time of the alleged unlawful conduct. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) ("In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we have applied a functional approach . . . ." (quotation marks omitted)). "A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012). Prosecutorial duties include "the initiation and the pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is 'intimately associated' with the judicial process." *Mendenhall v. Goldsmith*, 59 F.3d 685, 689

---

[5] If Plaintiff intended to sue Stoop in her official capacity, the claim would be barred by the Eleventh Amendment. "A suit against [a]ssistant [s]tate's [a]ttorneys in their official capacity is a suit against" the county's state's attorney. *See Manos v. Caira*, 162 F. Supp. 2d 979, 987 (N.D. Ill. 2001). The Eleventh Amendment prohibits suits against the state and its officials in their official capacities. *Id.* In Illinois, state's attorneys are state officials, so suits against the state's attorney are barred by the Eleventh Amendment. *Id.*; *see also Romero v. City of Chicago*, No. 21 C 1592, 2022 WL 874664, at *4 (N.D. Ill. Mar. 24, 2022) (citing *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994)).

(7th Cir. 1995) (quoting *Buckley*, 509 U.S. at 270). Qualified immunity, by contrast, covers administrative or investigative functions "that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley*, 509 U.S. at 273.

Here, Plaintiff is complaining about Stoops's actions in enforcing his obligation to pay child support, but the actions were related to an ongoing judicial proceeding to collect unpaid child support from Plaintiff. *See* Docket Sheet (indicating that a petition was filed by the State's Attorney to determine arrearage in 2016 and a petition to modify arrearage payment was filed by the State's Attorney in 2018); Case History Report 4–5 (same). Thus, they are prosecutorial functions. *See Thomas v. City of Peoria*, 580 F.3d 633, 638 (7th Cir. 2009) ("'Prosecution,' for purposes of absolute prosecutorial immunity, just means law enforcement by public officers. Whether the law being enforced is civil or criminal or something in between, such as a parking violation, is irrelevant."); *Mendenhall*, 59 F.3d at 691–92 (finding that a prosecutor was entitled to absolute prosecutorial immunity when he was negotiating a resolution for a civil forfeiture proceeding). Stoops is entitled to absolute immunity, and Plaintiff's claims against her must be dismissed. *See Wilson v. Madigan*, 14-CV-1274, 2014 WL 4555655, at *2 (C.D. Ill. Sept. 15, 2014) (holding that an Illinois assistant attorney general was "protected by absolute prosecutorial immunity for pursuing [a] child support action"); *Sellers v. Allen Cnty. Child Support Div.*, No. 1:04 CV 478 TLS, 2005 WL 1140699, at *4–5 (N.D. Ind. May 13, 2005) (holding that a county prosecutor was entitled to prosecutorial immunity where the plaintiff was suing her "based on her role in enforcing the [p]laintiff's child support arrearage").

C. Leave to Amend

"[A] plaintiff . . . should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. &*

9

*Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).  Plaintiff has already been given an opportunity to amend his complaint, Mar. 23, 2021 Order 2, and his Amended Complaint still fails to state a claim or asserts claims against individuals who are entitled to immunity.  The Court declines to grant Plaintiff leave to amend his complaint again.

## CONCLUSION

Accordingly, Plaintiff Unree Moultrie III's motion to proceed *in forma pauperis*, ECF No. 19, and motions for status, ECF Nos. 22 & 24, are MOOT.  His motion to withdraw, ECF No. 21, is GRANTED, and his motion to request counsel, ECF No. 20, is therefore WITHDRAWN.  Plaintiff's Amended Complaint, ECF No. 18, is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).  The case is DISMISSED, and the Clerk is directed to enter judgment and close the case.

Entered this 12th day of September, 2022.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
